UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRAIN & SPINE SURGEONS OF NEW YORK, P.C., a New York professional corporation,

                            Plaintiff,

-against-

TRIPLE–S SALUD INC., d/b/a "BLUE CROSS BLUE SHIELD OF PUERTO RICO," a foreign corporation,

                            Defendant.

**OPINION AND ORDER**

No. 22-CV-08951 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Brain & Spine Surgeons of New York, P.C. ("Plaintiff") commenced this action against Triple-S Salud Inc., d/b/a "Blue Cross Blue Shield of Puerto Rico" ("Defendant") on October 20, 2022. (Doc. 1, "Compl."). The Complaint presses two claims for relief: unjust enrichment and breach of implied-in-fact contract. (*Id.*).

The Court held a pre-motion conference concerning Defendant's anticipated motion to dismiss on May 31, 2023 and, in light of Defendant's jurisdictional arguments, directed the parties to conduct limited jurisdictional discovery. (*See* May 31, 2023 Min. Entry). The parties engaged in said discovery and the Court thereafter conducted a continued pre-motion conference on July 26, 2023, at which time a briefing schedule for Defendant's motion was set. (*See* July 26, 2023 Min. Entry).

Defendant moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) in accordance with the briefing schedule set by the Court. (Doc. 28; Doc. 29, "Def. Br."; Doc. 30, "Leitner Decl."). Plaintiff filed opposition thereto (Doc. 33, "Pl. Br."; Doc.

34, "Turner Decl."), and the motion was fully submitted upon the filing of Defendant's reply brief (Doc. 31, "Reply").[1]

For the reasons set forth below, Defendant's partial motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant, a foreign corporation based in Puerto Rico, provides health insurance coverage in the Commonwealth of Puerto Rico and the Virgin Islands of the United States. (Compl. ¶ 6). Defendant "does not have any office in New York, nor does it employ anyone who resides in New York," and "is regulated by Puerto Rico and not New York." (Leitner Decl., Ex. A, "Torres-López Decl." ¶¶ 4, 16). Defendant is a licensee of the Blue Cross Blue Shield Association (the "Association"). (Compl. ¶ 49). Non-party Empire Blue Cross Blue Shield ("Empire") is also a member of the Association. (*Id*. ¶ 50; Torres-López Decl. ¶ 12). The Association's licensees participate in the BlueCard Program, which "facilitates cooperation among all licensees of the BCBS Association, allows the licensees to operate as a single national program, and provides 'a single point of contact for . . . claims payment/adjustment and issue resolution.'" (Compl. ¶ 53). Plaintiff alleges that pursuant to the BlueCard Program, when subscribers of certain health insurance plans issued by Defendant receive medical services in New York, Empire acts as Defendant's agent in administering the claims for those services in accordance with its payment arrangements with providers in the state of New York. (*Id*. ¶ 56).

Plaintiff "provides medical services to patients in Westchester County, New York" through its physicians. (*Id*. ¶ 18). Plaintiff alleges that between August 18 and 22, 2016, Plaintiff's

---

[1] Plaintiff requested, and the Court granted, permission to submit in native Excel format a Claims Spreadsheet *in camera*. (Doc. 32; Doc. 35).

physicians performed two emergency, medically necessary procedures on Patient I.F. as a result of their severe spinal injuries. (*Id*. ¶¶ 3, 35, 36). Plaintiff alleges that it was obligated under Federal and New York laws to perform these procedures due to the emergency nature of Patient I.F.'s medical condition. (*Id*. ¶¶ 43, 45).

Patient I.F. was covered under Defendant's policy and was a part of the Association's BlueCard Program. (*Id*. ¶¶ 1, 25, 58). Plaintiff submitted health insurance claim forms (the "Claims") to Defendant, through Empire, requesting reimbursement for the subject medical services rendered to Patient I.F. (*Id*. ¶ 64). Plaintiff charged a combined total of $893,184.00 for those medical services, but Defendant (individually and/or through Empire) only paid Plaintiff a combined total of $17,814.71. (*Id*. ¶¶ 66, 67).

Plaintiff is an "out-of-network" provider with Defendant and did not have any prior agreements for rates of payment with Defendant. (*Id*. ¶ 37). Plaintiff alleges that "industry standards dictate that . . . the amount Defendant should pay to Plaintiff for the Surgeries is based on 'the reasonable and customary amount,'" and that "Defendant is therefore obligated to pay Plaintiff for the reasonable value of the services provided as part of the Surgeries." (*Id*. ¶¶ 39, 41). Plaintiff alleges that "Defendant's actions have effectively prevented Plaintiff from recovering the amounts owed because . . . Plaintiff is prohibited by statute from requesting the additional payment from Patient." (*Id*. ¶ 48).

This litigation followed.

## **STANDARD OF REVIEW**

### I.    Federal Rule of Civil Procedure 12(b)(2)

"A party may move to dismiss an action for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Although it is a plaintiff's burden to establish jurisdiction in response to such a motion,

"the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84 (2d Cir. 2013).[2] At this stage, "[i]n order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir. 2013); *NuMSP, LLC v. St. Etienne,* 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) ("[T]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be factually supported."). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha,* 609 F.3d 30, 35 (2d Cir. 2010). The Court "may consider materials outside the pleadings" in analyzing a motion to dismiss under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 86 (2d Cir. 2013). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter,* 702 F.3d 725, 727 (2d Cir. 2012). "However, where a defendant rebuts a plaintiff's unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiff does not counter that evidence—the allegation may be deemed refuted." *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 480 (N.D.N.Y. 2019).

"Assessing whether Defendants are subject to specific long-arm personal jurisdiction—that is, jurisdiction based upon their contacts with the state—is a two-step process." *Yak v. BiggerPockets, L.L.C.,* No. 19-CV-05394, 2020 WL 5505351, at *3 (S.D.N.Y. Sept. 10, 2020).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

"First, the Court must determine whether personal jurisdiction exists under New York's long-arm statute, C.P.L.R. § 302." *Id.* (citing *Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 168 (2d Cir. 2015)). "Second, if New York's particular requirements are satisfied, the Court 'analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution.'" *Id.* (quoting *Eades*, 799 F.3d at 168).

II.   Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556

5

U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendant moves to dismiss the Complaint on the grounds that this Court lacks personal jurisdiction over it; and, in the event the Court determined that it could fairly exercise personal jurisdiction over Defendant as to Plaintiff's claims of unjust enrichment and breach of implied contract, dismiss the claims as a matter of law. The Court considers each of Defendant's arguments in turn.

I.     Personal Jurisdiction

The first branch of Defendant's motion seeks dismissal of Plaintiff's claims on the ground that the Court lacks personal jurisdiction over Defendant. Defendant contends that it should not be subject to specific jurisdiction in New York because it is a foreign corporation that "does not market its policies to persons who reside outside of its exclusive territory." (Def. Br. at 4). Defendant argues that Patient I.F.'s address has always been listed in their records as Bayamón, Puerto Rico. (*Id*. at 3 (citing Torres-López Decl. ¶ 11)). Defendant concedes, however, that at times material to this case, "approximately 150 . . . insureds working for Puerto Rico or Virgin Islands-based employers . . . had New York addresses on file with [Defendant]," but that these same individuals would not have been issued individual policies as residents of New York State. (*Id*. at 4 (citing Torres-López Decl. ¶ 15)). This is because, Defendant contends, "it is sometimes the case that an employer [with a Defendant-issued group policy] will transfer an insured/employee away from Puerto Rico and the U.S. Virgin Islands." (Torres-López Decl. ¶ 14).

New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") § 302(a)(1), provides in relevant part that "a court may exercise personal jurisdiction over any non-

domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state." In certain circumstances, "[a] single act within New York will… satisfy the requirements of section 302(a)(1)." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) ("[C]ourts have explained that section 302 is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."). "Other times, however, when an individual act in New York will not suffice, an ongoing course of conduct or relationship in the state may." *Id.* Through its conduct, Defendant engaged in a continuous pattern of behavior by which it "purposefully avail[ed] itself of the privilege of conducting activities within New York." *Id.* at 61.

Defendant has insured, albeit through employer-sponsored group policies, almost 150 New York residents. (Torres-López Decl. ¶ 15). Defendant elected to provide coverage to these insureds nationwide, including in New York, through the BlueCard Program. (*Id.* ¶ 7). Indeed, Defendant itself acknowledges that "discovery confirms . . . over that time period Triple-S has paid New York providers . . . for claims related to services rendered to" Defendant's insureds in New York. (Reply at 4 (citing Torres-López Decl., ¶¶ 8-9, 11, 14-15)). Significantly, between 2015 and 2017, Defendant made nearly $11 million in payments to providers in New York for treatment received by its insureds in New York.[3] And, as another court has noted, Defendant "entered into the

---

[3] This figure is generated by running a "SUM" function of the data in Column R (titled "ClaimLinePaid") of the Claims Spreadsheet, which reflects the amounts Defendant paid for services rendered to its members received in Empire's service area over the subject three-year period.

BlueCard Program in order to receive discounted rates from health care providers throughout the United States" which in this case, includes New York. *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1299 (N.D. Ala. 2016). Additionally, Defendant submitted payment of $17,814.71 to Plaintiff for services rendered to Defendant's insured, Patient I.F., who was residing in New York, for services which were rendered in New York. (Compl. ¶¶ 1, 3, 27, 66-68).

Defendant maintains that this case is analogous to cases involving car insurance, citing *Flatlands Med., P.C. v. AAA Ins.*, 984 N.Y.S.2d 793 (App. Term 2d Dep't 2014). (Def Br. at 9; Reply at 1-2, 4-5). The defendant in that case "established through the affidavit of its corporate officer that there was no transaction of business in the State of New York . . . ." *Id*. at 795. The Appellate Term further noted "that the mere unilateral act of an automobile insurer's insured of driving into New York State, without more, is insufficient to permit a New York court to exercise long-arm jurisdiction over the out-of-state insurer." *Id*. These findings are unlike the facts presented here, where the record establishes that Defendant did transact business in New York, and there exist circumstances beyond the "mere unilateral decision by I.F., [Defendant's] insured, to visit New York, and the unfortunate fact that while in New York he sustained an injury that required medical treatment" (Reply at 1).

Based on Defendant's significant payments to New York providers for services rendered in New York and the presence of approximately 150 insureds in New York, as well as Defendant's receipt of discounted rates from health care providers through its participation in the BlueCard Program, the Court concludes that Defendant has purposefully and regularly availed itself of the privileges of transacting business in New York, and Plaintiff's claims relate to this conduct.

After sufficiently establishing the existence of a business transaction, the Court must determine whether "there is an articulable nexus, or a substantial relationship, between the claim

asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)). As discussed *supra*, Defendant willfully engaged in a pattern of business within New York by paying claims submitted by New York providers for medical care rendered to their insureds residing in New York. Plaintiff's claim arises out of an alleged underpayment from one such transaction, where physicians employed by Plaintiff (a healthcare provider in New York) rendered medical services to Patient I.F., one of Defendant's insureds residing in New York. Plaintiff's allegations place this claim at the center of the pattern of business Defendant conducted within the state of New York and establishes a "substantial relationship" between the two. *Id.*

Once minimum contacts are established, the Court must also determine whether exercising personal jurisdiction over the Defendant "would comport with fair play and substantial justice." *Licci*, 732 F.3d at 170 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Factors that the Court considers in this analysis include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloe*, 616 F.3d at 164.

The Court recognizes that there will be some degree of burden for Defendant if it is compelled to travel to New York for a trial. However, a defendant's burden to litigate in a distant jurisdiction is limited in the present day, and the Second Circuit Court of Appeals has recognized that "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84

F.3d 560, 574 (2d Cir. 1996). Accordingly, the first factor weighs only slightly in favor of Defendant. Defendant argues that Puerto Rico has "a prevailing interest in ensuring that [Defendant], a Puerto Rico-based and Puerto Rico regulated insurer, is validly interpreting a Puerto Rico health insurance policy." (Def. Br. at 13). While Puerto Rico possesses a significant interest in adjudicating a matter concerning an insurance company that is subject to its regulation, as Plaintiff points out, "this case involves medical services provided in New York, by New York physicians." (Pl. Br. at 12). The State of New York has a similar and no less compelling interest in adjudicating a case involving the operations of healthcare providers within its borders. The Court therefore views the second factor as neutral. The third factor weighs slightly in favor of Plaintiff, as Plaintiff is a professional corporation based in New York with an interest in seeking relief in the jurisdiction in the state in which it is domiciled. Defendant did not address the fourth factor, but it does not appear likely that holding Defendant subject to personal jurisdiction in this district will contribute to a less efficient resolution of the controversy. Defendant likewise did not address the fifth factor, but it is not likely that asserting personal jurisdiction over Defendant will impair any substantive social policies. The Court therefore regards both the fourth and fifth factors as neutral. Accordingly, subjecting Defendant to personal jurisdiction in New York would not be unreasonable under the Due Process Clause.

Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is, accordingly denied.[4]

---

[4] Plaintiff also proceeds under an agency theory of personal jurisdiction. Given the Court's conclusion that Defendant's conduct in New York went beyond mere nominal participation in the BlueCard Program and consisted of a pattern of business activity which invoked the benefits and protections of the laws of New York, the long-arm statute provides a basis for personal jurisdiction over Defendant and the assertion of personal jurisdiction comports with Constitutional Due Process requirements. The Court, therefore, need not and does not reach the parties' arguments concerning whether Empire is properly considered Defendant's agent for jurisdictional purposes.

II.     Failure to State a Claim for Relief

    A.  First Claim for Relief: Unjust Enrichment

Plaintiff's First Claim for Relief purports to bring a claim for unjust enrichment against Defendant. (Compl. ¶¶ 72-88). "To state a claim for unjust enrichment under New York law, a plaintiff must allege that '(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 840 N.Y.S.2d 445, 448 (App. Div. 2007)).[5] There must be "a 'direct' and 'specific' benefit" to the defendant. *See In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007).

Defendant argues that Plaintiff's unjust enrichment claim fails as a matter of law because Plaintiff has pointed to no authority that unequivocally holds that physician groups—as opposed to hospitals—may sue a medical insurer for underpayment on an unjust enrichment theory under New York law. The Court agrees.

A New York hospital that is "required by law to treat patients in an emergency room" may pursue a claim for unjust enrichment if that hospital believes, in good faith, it was not fully compensated for such emergency medical services. *New York City Health & Hospitals Corporation v. WellCare of New York, Inc.*, 937 N.Y.S.2d 540, 545-46 (Sup. Ct. 2011). Courts, in the wake of *WellCare*, have distinguished circumstances involving private physicians, rather than a hospital, and when Medicare patients are not involved. *See, e.g., Sasson Plastic Surgery, LLC v.*

---

[5] The parties' briefs all assume that New York substantive law governs Plaintiff's state law claim. If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

11

*UnitedHealthcare of N.Y., Inc.*, No. 17-CV-01674, 2022 WL 2664355, *6 (E.D.N.Y. Apr. 26, 2022) ("the *WellCare* decision was both premised upon the applicability of specific Medicare-related federal laws and confined to hospitals, not individual providers like Sasson"); *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 2017 WL 5668420, *4 (N.Y. Sup. Ct., Nov. 27, 2017) (holding *WellCare* was distinguishable from cases where, "as here, private practice physicians [were] performing services under contract with those hospitals"). Plaintiff is not a hospital, but rather an entity that employs physicians to provide medical services, including patients like Patient I.F. admitted into a hospital for spinal injuries. (Compl. ¶ 18). There is no allegation that I.F. is a Medicare patient. Plaintiff's claim is based on the theory that "the insurer's benefit is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.*, No. 20-CV-09183, 2021 WL 4437166, at *12 (S.D.N.Y. Sept. 28, 2021).

      Plaintiff has not cited, as Defendant points out, any precedent from an appellate court addressing whether an insurer benefits from health care services provided to its insureds for the purposes of an unjust enrichment claim brought by a private physicians. Other courts in this circuit have concluded that "health care providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds." *Murphy Med. Assocs., LLC v. United Med. Res., Inc.*, No. 22-CV-00083, 2024 WL 1072731, at *13 (D. Conn. Mar. 12, 2024) (quoting *Murphy Med. Assocs., LLC v. 1199 SEIU Nat'l Benefit Fund*, No. 22-CV-00064, 2023 WL 2631811, at *6 (D. Conn. Mar. 24, 2023) and collecting cases); *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194, 205 (S.D.N.Y. 2023); *Sasson Plastic Surgery, LLC*, 2022 WL 2664355, *6; *Buffalo Emergency Assocs., LLP*, 2017 WL 5668420, *4. This Court is in accord with the other District Judges who have addressed this issue and likewise

does not read *WellCare* to extend beyond scenarios involving claims by hospitals and concerning emergency services rendered to Medicare beneficiaries.

To maintain an unjust enrichment claim under New York law, "a 'direct' and 'specific' benefit" to the defendant must be alleged. *Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d at 532. As other courts in this circuit have reasoned, "[i]t is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit." *Murphy Medic. Assocs.*, 2023 WL 2631811 at *6 (quoting *Travelers Indem. Co. of Connecticut v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)). Plaintiff has not adequately alleged that Defendant benefitted from the provision of health care to Patient I.F.

Separately, there is no allegation a service was provided to Defendant at Defendant's request, as is required under New York law. *Rowe Plastic Surgery of New Jersey, L.L.C.*, 705 F. Supp. 3d at 204 (citing *Katselnik & Katselnik, Inc. v. Silverman*, 2009 WL 3713145 (N.Y. Sup. Ct. Oct. 13, 2009); *see also Josephson v. United Healthcare Corp.*, No. 11-CV-03665, 2012 WL 4511365, at *5 (E.D.N.Y. Sept. 28, 2012) (dismissing a medical providers' unjust enrichment claim against an insurer because the medical "services were performed at the behest of [the medical providers'] patients, not United.").

Accordingly, the motion to dismiss is granted as to the First Claim for Relief.

B. <u>Second Claim for Relief: Breach of Implied-in-Fact Contract</u>

Plaintiff's Second Claim for Relief purports to bring a claim for breach of implied-in-fact contract against Defendant. (Compl. ¶¶ 89-101). "The elements of a breach of implied contract claim are the same as for a traditional breach of contract claim: '(1) the existence of a contract, (2)

13

performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach.'" *In re Unite Here Data Sec. Incident Litig.*, No. 24-CV-01565, 2024 WL 3413942, at *12 (S.D.N.Y. July 15, 2024) (quoting *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. Appx. 274, 276 (2d Cir. 2018)). An implied contract may result from the facts and circumstances of the case and the intention of the parties as indicated by their conduct. *Id.* (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)); *Soley v. Wasserman*, 823 F. Supp. 2d 221, 230 (S.D.N.Y. 2011). Under New York law, an implied-in-fact contract requires all of the elements required of any valid contract, including consideration, mutual assent, legal capacity, and legal subject matter. *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006).

Plaintiff is not "in network" with Defendant and Plaintiff has expressly alleged there was no agreement between the parties as to the price of the services rendered to Patient I.F. (Compl. ¶¶ 37, 94). Plaintiff thus "does not plead a necessary meeting of the minds as to the price of services, which under New York law is an essential contract term." *Emergency Physician Servs. of New York*, 2021 WL 4437166, at *12 (citing *Gorodensky v. Mitsubishi Pulp Sales (MC), Inc.*, 92 F. Supp. 2d 249, 256 (S.D.N.Y. 2000)). Separately, Plaintiff does not plead consideration because it alleges that it provides healthcare services to patients not in exchange for Defendant's payments but instead out of "a pre-existing legal obligation," which "does not amount to consideration." *Id.* (quoting *Hinterberger v. Cath. Health Sys., Inc.*, 536 F. App'x 14, 17 (2d Cir. 2013)). (*See* Compl. ¶ 42).

Accordingly, the motion is granted as to the Second Claim for Relief.

## CONCLUSION

Based upon the foregoing, that branch of Defendant's motion to dismiss for lack of personal jurisdiction is DENIED. The branch of Defendant's motion to dismiss for failure to state a claim for relief is GRANTED.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 28) and close this case.

**SO ORDERED:**

Dated: White Plains, New York
   September 11, 2024

_____

Philip M. Halpern
United States District Judge